THIRD DEPARTMENT, MAY, 2017

(May 4, 2017)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL WILLIAMS, Appellant. [53 NYS3d 716]—

Rose, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered July 10, 2013, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal sale of a controlled substance in the second degree (two counts), criminal sale of a controlled substance in the third degree (seven counts), criminal possession of a controlled substance in the third degree (six counts) and criminal possession of a controlled substance in the fourth degree.

Following an investigation by the Attorney General's

Organized Crime Task Force, defendant and 51 others were charged in a 261-count indictment with conspiracy in the second degree and other crimes stemming from the distribution and sale of cocaine and heroin in Albany County, among other locations. The case against defendant was based in large part upon intercepted cellular telephone conversations and text messages exchanged with certain codefendants and other individuals in which coded language was used to disguise the illicit nature of the transactions. Following an extensive 11-week jury trial,[1] defendant was convicted of one count of conspiracy in the second degree (count 1), two counts of criminal sale of a controlled substance in the second degree (counts 199 and 206), seven counts of criminal sale of a controlled substance in the third degree (counts 196, 197, 198, 201, 203, 207 and 208), six counts of criminal possession of a controlled substance in the third degree (counts 176, 191, 192, 249, 251 and 261) and one count of criminal possession of a controlled substance in the fourth degree (count 250). He was sentenced, as a second felony offender, to an aggregate prison term of 108 years, with various terms of postrelease supervision. He now appeals.

Defendant first contends that County Court should have dismissed counts 176, 191 and 192, charging him with criminal possession of a controlled substance in the third degree (*see* Penal Law § 220.16 [1], [12]), because the factual allegations set forth in the indictment did not support these charges. We disagree. Although the indictment erroneously included the word "attempt" in reference to these counts, the applicable statutory provisions were expressly incorporated by reference, thereby apprising defendant of the elements of each crime and rendering counts 176, 191 and 192 jurisdictionally valid (*see People v Cane*, 123 AD3d 1301, 1302 [2014], *lv denied* 25 NY3d 988 [2015]; *see generally People v D'Angelo*, 98 NY2d 733, 734-735 [2002]). In addition, County Court properly granted the People's pretrial motion to amend these counts to remove the word "attempt" (*see People v Mitchell*, 94 AD3d 1252, 1253 [2012], *lv denied* 19 NY3d 964 [2012]). Defendant's related challenge to the factual allegations set forth in counts 1 and 250, charging defendant with conspiracy in the second degree (*see* Penal Law § 105.15) and criminal possession of a controlled substance in the fourth degree (*see* Penal Law § 220.09 [1]), respectively, is unpreserved for our review (*see People v Orcutt*, 49 AD3d 1082, 1084 [2008], *lv denied* 10 NY3d 938 [2008]).

---

1. Defendant was jointly tried with five codefendants. This Court recently handed down a decision with regard to codefendant Guy Anderson (*People v Anderson*, 149 AD3d 1407 [2017]).

Were we to review this claim, we would find it to be equally without merit.

Defendant's claim that numerous counts of the indictment are duplicitous is similarly unpreserved for our review. In any event, this contention is also without merit inasmuch as "[e]ach disputed count charged a single offense and the evidence at trial, as well as the instructions to the jury, made plain that each count involved a single criminal act" (*People v Simmons*, 115 AD3d 1018, 1019 [2014]; *see* CPL 200.30 [1]; *People v Whitehead*, 130 AD3d 1142, 1143 [2015], *affd* 29 NY3d 956 [2017]; *see generally People v Alonzo*, 16 NY3d 267, 269 [2011]).[2] Although defendant's related contention that he was convicted upon multiplicitous counts is preserved for our review, we nonetheless find it to be unavailing. In this regard, "[a]n indictment is considered multiplicitous when two or more separate counts charge the same crime" (*People v Blount*, 129 AD3d 1303, 1304 [2015], *lv denied* 27 NY3d 992 [2016]; *see People v Alonzo*, 16 NY3d at 269; *People v Hoffman*, 130 AD3d 1152, 1153 [2015], *lv denied* 26 NY3d 1009 [2015]). Here, a review of the record demonstrates that each challenged count required proof of an additional fact that the others did not and, thus, defendant was not convicted upon multiplicitous counts (*see People v Nailor*, 268 AD2d 695, 696 [2000]; *People v Kindlon*, 217 AD2d 793, 795 [1995], *lv denied* 86 NY2d 844 [1995]).

Next, defendant contends that his conspiracy conviction (count 1) and 12 of his other convictions (counts 176, 191, 192, 196, 197, 198, 199, 201, 203, 206, 207 and 208) were not supported by legally sufficient evidence and were against the weight of the evidence because the People failed to recover or produce any drugs actually possessed or sold by him and, therefore, they were unable to establish his participation in the conspiracy or his possession and sale of drugs as to these counts. When conducting our legal sufficiency analysis, "we must evaluate whether, after viewing the evidence in the light most favorable to the People, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*People v Ramos*, 19 NY3d 133, 136 [2012] [internal quotation marks, brackets, emphasis and citations omitted]; *see People v Novak*, 148 AD3d 1352, 1354 [2017]). In our weight of the evidence review, where, as here, a different verdict would not have been unreasonable, we "must, like the

---

2. Defendant's pro se contention that the conspiracy charge (count 1) was duplicitous is also unpreserved for our review and, in any event, without merit (*see People v Falkenstein*, 288 AD2d 922, 922-923 [2001], *lv denied* 97 NY2d 704 [2002]; *see also People v Charles*, 61 NY2d 321, 327-328 [1984]).

trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; *see People v Danielson*, 9 NY3d 342, 348 [2007]). In our evaluation of the evidence, we are mindful that "the People are not required to recover drugs for testing in order to prove possession or sale of a controlled substance; rather, they may rely on other evidence that establishes the nature of the drugs in question beyond a reasonable doubt" (*People v Wright*, 139 AD3d 1094, 1098 [2016], *lv denied* 28 NY3d 939 [2016]; *see People v Whitehead*, 29 NY3d 956, 958 [2017]).

Dennis Guiry, an investigator with extensive experience with gang and narcotics investigations and the use of dialogue disguised for drug dealings, testified that he was the case officer for this investigation and, in that capacity, he listened to "hundreds" of wire-tapped phone calls. Guiry testified that he has had numerous prior dealings with defendant and that he was familiar with defendant's voice from those dealings, as well as from listening to defendant's voice in approximately 50 to 100 of the intercepted phone calls. In connection with Guiry's testimony, the relevant phone calls were played to the jury and the jury was provided with transcripts of the conversations and text messages to aid them when they were listening to the calls. After a call was played, in most instances, Guiry provided his opinion as to the terms used and the true nature of the conversations. For example, Guiry testified that, in a series of calls on January 10, 2012, defendant can be heard discussing the difficulties that he was having cooking powder cocaine into crack cocaine and, at one point, defendant stated that he "went and grabbed a dollar more." Although that statement was seemingly innocuous, Guiry testified that defendant was actually referencing his purchase of 100 grams of cocaine. In addition to the proof regarding the specific occasions on which defendant possessed or offered to sell drugs, the People also introduced intercepted phone calls between defendant and certain coconspirators, including codefendant Guy Anderson, in which they discussed, among other things, cooking cocaine and gathering money to enable Anderson to purchase drugs from a dealer in New York City. Moreover, a witness testified that, during the alleged conspiracy period, she purchased heroin from defendant "four or five hundred times." Further, when defendant was arrested at his residence in February 2012, a large amount of cocaine and crack cocaine was discovered, as well as a digital scale, one of the phones that was a target of the eaves-

dropping warrant and a glass jar containing crack cocaine residue.[3]

After viewing all of the foregoing proof in the light most favorable to the People, and notwithstanding the fact that no drugs were recovered on any occasion other than when defendant was arrested, we are satisfied that legally sufficient evidence was adduced in the form of, among other proof, the extensive phone records and Guiry's explanatory testimony (*see People v Whitehead*, 130 AD3d at 1145). Moreover, after viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we find that the weight of the evidence also supports the challenged convictions (*see People v Williams*, 138 AD3d 1233, 1235-1236 [2016], *lv denied* 28 NY3d 939 [2016]; *People v Scott*, 129 AD3d 1306, 1307 [2015], *lv denied* 26 NY3d 1092 [2015]). Finally, contrary to defendant's contention, County Court did not abuse its discretion by admitting into evidence Guiry's expert testimony, which was properly limited to an explanation of information that would otherwise be beyond the knowledge of a typical juror (*see People v Anderson*, 149 AD3d at 1413; *People v Blackman*, 118 AD3d 1148, 1150 [2014], *lv denied* 24 NY3d 1001 [2014]; *see also People v Inoa*, 25 NY3d 466, 472 [2015]; *People v Whitehead*, 130 AD3d at 1144-1145).

Defendant also contends that County Court erred in denying his request to provide the jury with a multiple conspiracies charge. More specifically, defendant notes that the evidence at trial did not establish that he was ever in contact with the main supplier of the narcotics and he argues that, therefore, he cannot be considered a member of the single overarching conspiracy. We cannot agree. A multiple conspiracies charge "recogniz[es] the possibility of multiple conspiracies and direct[s] an acquittal in the event that the jury concludes that something other than a single integrated conspiracy was proven" (*People v Leisner*, 73 NY2d 140, 150 [1989]). A trial court is required to provide this charge "whenever the possibility of more than one conspiracy is supported by a reasonable view of the evidence" (*id.*; *see People v Brown*, 142 AD3d 769, 771 [2016], *lvs denied* 28 NY3d 1123, 1125 [2016]; *People v Alfonso*, 35 AD3d 269, 269 [2006], *lv denied* 8 NY3d 878 [2007]; *People v Sica*, 163 AD2d 541, 542 [1990], *lv denied* 76 NY2d 990 [1990]). Contrary to defendant's contention, however, it is of no consequence that the proof indicated that he was not in contact with all of the al-

---

**3.** The drugs found in defendant's residence formed the basis for counts 249, 250, 251 and 261. Defendant does not challenge the legal sufficiency or weight of the evidence as to these charges.

leged coconspirators (*see generally People v Riggins*, 28 AD3d 934, 935-936 [2006], *lv denied* 6 NY3d 897 [2006]; *People v Brooks*, 268 AD2d 889, 890-891 [2000], *lv denied* 95 NY2d 794 [2000]). Here, the People introduced numerous intercepted phone conversations that defendant had with other alleged coconspirators clearly establishing defendant's intent to obtain and distribute large quantities of narcotics in furtherance of one overarching conspiracy. Thus, in our view, "[t]here was no reasonable view of the evidence that there was any conspiracy narrower in scope than the single conspiracy charged in the indictment" (*People v Brown*, 142 AD3d at 771; *see People v Anderson*, 149 AD3d at 1414).

Regarding the sentence, we cannot agree with defendant's contention that the imposition of consecutive sentences for counts 249 and 251 was illegal inasmuch as the record demonstrates that " 'defendant's acts underlying the crimes [were] separate and distinct' " (*People v Major*, 143 AD3d 1155, 1159 [2016], *lv denied* 28 NY3d 1147 [2017], quoting *People v Ramirez*, 89 NY2d 444, 451 [1996]; *cf. People v Farga*, 180 AD2d 484, 485 [1992], *lv denied* 80 NY2d 830 [1992]; *compare People v Molina*, 73 AD3d 1292, 1292-1293 [2010], *lv denied* 15 NY3d 807 [2010]). We are, however, persuaded that defendant's aggregate sentence of 108 years in prison, although legally permissible, should be modified in the interest of justice (*see* CPL 470.15 [6] [b]; *People v Delgado*, 80 NY2d 780, 783 [1992]; *People v Perry*, 70 AD3d 1063, 1065 [2010], *lv denied* 14 NY3d 804 [2010]; *People v Wallace*, 53 AD3d 795, 798 [2008], *lv denied* 11 NY3d 795 [2008]; *People v McCombs*, 18 AD3d 888, 890-891 [2005]). After a review of the circumstances of this case and defendant's prior criminal history, we modify defendant's sentence by directing that the sentences for counts 196, 199, 206 and 249 run consecutively to each other, but concurrently to the sentences on the other counts, and the sentences on all other counts are to run concurrently to each other. Thus, defendant's sentence will be an aggregate prison term of 39 years, to be followed by five years of postrelease supervision.[4]

Defendant's remaining contentions, including his claim that Albany County was not the appropriate venue, have been considered and determined to be lacking in merit.

---

4. Although the total aggregate of the four terms of postrelease supervision is 13 years, the terms will merge as a matter of law and are satisfied "by discharge of the period of post-release supervision having the longest unexpired time to run," which here is five years (Penal Law § 70.45 [5] [c]; *see People v Decoste*, 144 AD3d 1265, 1266 n [2016]; *People v Stocum*, 143 AD3d 1160, 1163 [2016]).

McCarthy, J.P., Garry, Egan Jr. and Mulvey, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by directing that defendant's sentences for criminal sale of a controlled substance in the third degree, criminal sale of a controlled substance in the second degree (two counts) and criminal possession of a controlled substance in the third degree under counts 196, 199, 206 and 249 of the indictment shall run consecutively to one another and concurrently to the remaining sentences imposed, and said remaining sentences shall run concurrently to each other, and, as so modified, affirmed.